Our last case for today is Hagen v. Fond du Lac School District, Appeal No. 24-1688. Mr. Retko. Good morning, Your Honor. This is Attorney William Retko. I am here on behalf of the plaintiff, Appellant Michelle Hagen, who is here in person also. I'd like to just note at the beginning, I'd like to reserve two minutes for rebuttal, and also I'd like to thank the court for allowing this adjournment due to my neck surgery. I appreciate that. Thank you so much. First of all, this case is a gender discrimination, age discrimination case that Ms. Hagen has  The plaintiff presented her case, and we believe she met the standards in both the McDonnell Douglas test and the evidence as a whole under the Ortiz case. The District Court's decision, the first thing I want to address is the District Court's decision on the McDonnell Douglas on the gender discrimination case. They found that Ms. Hagen presented enough evidence to show that she met the fact that she was in a protected category. She presented enough evidence to show that the defendants, she was meeting their legitimate expectations, and she presented enough evidence to show she suffered an adverse action. What the court also found, and what we found to be wrong, was that the court said that she only presented one arguably situated male treated more favorably than her, and that was not enough to get the case beyond summary judgment. We presented case law to show that the Seventh Circuit case law is such that the plaintiff only needs to identify a comparator outside of her protected class to meet that fourth element. Mr. Retko? Yes. Let's assume that's correct, okay? Yes. For a minute. How is Mr. Shipper a comparable, a comparator? He didn't have any performance problems at all, ever. Well, he did, similarly speaking, Judge. He was the principal at an elementary school called Riverside Elementary. That school was placed on the Wisconsin Department of Instruction's focus school list. In other words, it's a failing school. And despite having that occur, he was moved from the elementary principal position to a middle school principal position.   Hold on one second. I thought the evidence that was before Mr. Shipper was the principal at that school, the school was labeled a focus school by the Department of Public Institution. No, Judge. It was while he was the principal there. While he was the principal there, and he was moved to a middle school principal position, which was deemed to be not a demotion, but a promotion. So the evidence in the record is that while Shipper was the principal of the, I think it was an elementary school, right? That's correct. While he was the principal of the elementary school, it was labeled as a focus school? That's correct. So that label did not exist prior to his becoming principal at the elementary school? My understanding is that while he was the principal there, it was a focus school. I know that. I get that. But there's a very important difference here. Was it labeled a focus school before he was named the principal there? Or was it labeled a focus school while he was the principal there? In other words, you can't penalize him for coming into a failing school. My understanding was that it occurred while he was the principal at the school. I'll have to check that, but I thought the evidence was that he was, that it was labeled a school, a focus school prior to his being assigned to that, to be a principal at that  Well, it's my understanding that the district court was correct in finding that he was a similarly situated male that was treated more favorably than my client. I think the district court, though, made a lot of assumptions here, and maybe the district court got it wrong when she said there's only one, but I think she made a lot of assumptions by saying if, even if it was an adverse action, even if there was a comparator, etc., etc. And that's the other thing I want to address, is there are more than one comparator, sir. Mr. Steinbarth, who was the younger male, which was both age and gender, was treated more favorably. Did he ever receive a developing or needs improvement rating on any performance evaluations? Well, I will say this, is that Ms. Hagen received overall effective ratings in each of her three years as high school principal. She was given salary increases, and she was performing up to her standard. Now the issue is, they kept trying to argue that she was demoted due to her performance, but that was never the case. In fact, when the superintendent, Siebert, demoted her, said it was because it's a better fit, but he never described what that meant. And moreover, he never told Ms. Hagen that she was not meeting her performance. She was never put on a performance improvement plan. There was no evidence to substantiate his ratings regarding developing or needs improvement, and moreover, the climate surveys were not part of the evaluation process. So in regard to that, Ms. Hagen was meeting her qualifications and doing her job correctly. And I will also say this, is that the defendants also argued there was no adverse action here, and that's incorrect, too, because Ms. Hagen was demoted from high school principal to an elementary school principal, and the evidence shows that the high school principal was the most visible and most... I'm not sure though, I don't know that it matters here, but I'm not sure that it's so clear cut that that's a demotion, that that would be an adverse action. It seems our case law requires more. She also received a loss in pay. Right, because after the first year, she received a loss in pay because she didn't have to work as many days, right? Same hourly rate, but... And she lost over $20,000, almost $20,000 in income per year by that demotion. So that has to be considered a loss of pay, and moreover, just the fact that the Supreme Court has recently come out with a case that says that a move from a prestigious position that is highly visible to a lesser visible position is showing of an injury respecting one's employment terms and condition, and that a forced transfer doesn't occur when it leaves an employee better off, and that's what happened here. Mr. Redcoat, what is your best argument with regard to pretext? Okay, well in that regard is that Mr. Steinbarth was invited into the lunch group, and it's a group of men that the superintendent had, which included another male principal and also included the athletic director, who's a male, and they used to go out to lunch together and they bet on games, and whoever the loser was paid for the lunch. Now the district court said that that didn't matter in this case, because argument was made that there was a female that attended a lunch group with them, and therefore females were included, and that's not the case. So is the argument that those facts construed in plaintiff's favor portray Mr. Steinbarth as someone that favors the company of men and kind of exclude women in those social contexts, so therefore his stated reasons for the actions against the plaintiff were motivated by gender? Is that the argument? No, the argument is that he also treated those men more favorably within the school district. For instance, Mr. Smith was having an affair with a married woman, that's a violation of the policies of the district, and he didn't get disciplined for that. So those are more kind of comparator arguments, right? No, it's showing how he treated these men more favorably than Ms. Hagen, because Ms. Hagen was not part of this men's group, and wasn't a man, she was a female that was treated much differently and didn't get the same things that these men got. At this time, I'd like to reserve the rest of my time for rebuttal if that's appropriate. What about, I'm sorry, what about for age? What are your best case for pre-Texas age? Mr. Steinbarth, Mr. Steinbarth, Mr. Steinbarth, he is a much younger male that was promoted to the position that Ms. Hagen held, and he didn't have to even go through a posting process because this Mr. Siebert, who was the superintendent, didn't put on a promo, didn't put on this for a posting process, instead he just picked this man, who he also invited into the lunch group with him, to be part of this, to be the principal that replaced her. And he didn't have the qualifications to be the high school principal, he'd never been an administrator in the high school level, and in addition to that, when he became the high school principal, he was allowed to have his salary paid at such a level that was higher than Ms. Simon's salary was. When Ms. Hagen took the position of principal, the superintendent told her, your pay will never be higher than Ms. Simon's because Ms. Simon's on my team, so to speak. So that's another thing that shows that Mr. Steinbarth was favored because he's a male and Ms. Hagen was not because she's female. There were lots of incidences like that that occurred. Thank you. Okay, thank you Mr. Retko, and we'll give you your rebuttal time. Mr. Wistrom. Good morning, your honors, may it please the court, my name is Oyvind Wistrom, I represent the defendant, Fond du Lac School District, the appellant in this matter. Ms. Hagen was hired by James Siebert initially as the assistant principal at the high school. At the time she was hired into that position from approximately 70 candidates, she similarly did not have any administrative experience at the high school, all of her prior experience was at the elementary school level. After the first year as the assistant principal, she was hired as the principal of the high school. In her first year in 2014-2015, she was the highest paid principal in the district and was even paid more than her male predecessor, John Wiltzius, and she remained the highest paid principal for the next three years at the principal for 2014-15, 2015-16, and 2016-17. Now during her second year, her performance evaluation noted three areas of improvement. School climate was noted as developing. She needed improvement in leadership for student learning, and she was also developing in human resource development, and there was information provided by Mr. Siebert or Dr. Siebert supporting each of those ratings in her performance review, and based on those deficiencies, she was asked to provide and create a growth plan for the following year, and although it wasn't a formal performance improvement plan, it was clearly putting her on notice that there were deficiencies in her performance that needed to be addressed. The following year and during the summer, Mr. Siebert and Ms. Simon, the human resources director, met with her on a monthly basis to address the areas of growth and to work on developing and improving the areas, including school climate, which was a significant area, and something that Ms. Siebert, or I'm sorry, Ms. Hagen was aware of at the time that she was hired as the principal. Dr. Siebert made it clear that culture and climate at the school was a significant area of concern that needed to be improved. Now, counsel for the appellant indicated that school climate or climate surveys were not part of the performance evaluation process, and that is clearly incorrect. The school used something called the CESA-6 system, which clearly identified six categories for grading administrators, and one of those six categories was, in fact, school climate. Additionally, climate was listed as one of the four data sources specifically mentioned in the evaluation system, and that system provided that school climate surveys are an important collection tool used to gather data regarding the perception of school administrators' performance. So, there were clearly performance issues. She was put on a plan, she was given additional resources and help during her second year, and, or I'm sorry, after her second year into her third year, and in April of 2017, the school climate survey came out again, and it rated the high school as by far the least and lowest performing school within the district. It was approximately 30% lower than any of the middle schools, and approximately 40% lower than any of the elementary schools in the district, so it was a clear area that needed to be addressed, and Ms. Hagen had failed to do that. At the time he sat down with Ms. Hagen to advise her of that decision, counsel indicated that all he said was that it was a better fit, that it's not accurate. Dr. Sieber testified that he talked about school climate and instructional leadership and that things were not moving fast enough for him, and even Ms. Hagen took notes during that meeting in which she specifically noted in her notes, school climate, leadership, not moving fast enough. In her deposition, she even acknowledged that perhaps he did mention those things during the meeting. Now with respect to Dr., or Mr. Steinbarth, who was selected as the replacement for Ms. Hagen after she was transferred to the elementary school level, he similarly didn't have any experience at the high school level, but he had performed exemplarily, very, very well at the elementary school level. Riverside, I'm sorry, Lakeshore Elementary where he was, was one of the highest performing schools based on school climate and culture. He had moved during his tenure there, moved it from the 83rd ranked school in the district to the 13th ranked, and he felt, Dr. Siebert felt that he was going to be a good fit, and in fact, it turned out that he was. Steinbarth is not similarly situated with respect to Ms. Hagen in that he never had any deficient performance ratings during his time at Lakeshore. Lakeshore was a high performing school. He did extremely well there, and in fact, in his final year before he was transferred, he was marked as distinguished, which is the highest distinguished, effective, developing, and needs improvement was the lowest. So he was the highest rated by Dr. Siebert before the transfer. So based on that, he is not similarly situated. With respect to Mr. Shipper, which only applies with a gender case because there is no evidence in the record as to Mr. Shipper's age, and there's also no evidence in the record that Mr. Shipper was the principal at Riverside at the time that Riverside was designated as a focus school by DPI. Mr. Shipper was the principal there in 2017 and was transferred in July of 2018. However, at the time Shipper was transferred from Riverside to Woodworth Middle School, Riverside was no longer a focus school. It was designated as a focus school in 2011 to 2012, that school year. It's generally a five-year program to work your way off being a focus school, and Mr. Shipper had successfully done that, and Riverside was no longer a focus school as of July of 2018 when he was transferred. There's also no evidence in the record, his performance reviews are not part of the record. There's no indication that he ever received any deficient marks during his time at Riverside. Briefly, with respect to the lunch group, Mr. Steinbart was invited to join the lunch group. It was a group of individuals that, as council mentioned, bet on sporting events, and the loser would generally be required to buy lunch, but it was not exclusively limited to females. Danica Lewis, who was an administrator in the district, was sometimes included and invited to join the lunch group, and simply not fitting into a clique, a social group, does not equate to discrimination on the basis of either age or gender. With respect to the adverse employment action, the only evidence that the transfer from the principal at the high school to a principal position at an elementary school was her perception that it was less prestigious and was less impactful. However, to some individuals, being in a less visible position may be beneficial. She did not suffer any kind of a wage loss in her first year, which was the 17-18 school year, when she was at Roberts Elementary School, and her ERD or EOC complaint filed in this year, 2017. The only thing she identified as the basis for her claim of discrimination based on age and gender was the fact that she was reassigned to Roberts, that the male who was hired, which was Steinbart, into the principal position at the high school was paid more than her, and that she had a negative performance evaluation. The district court properly noted that the time that she filed her EOC complaint, she was aware that her salary would be reduced the following year, but at the time she filed her complaint, there was no reduction in her pay or her benefits. That didn't happen until almost a year after she filed her complaint. And even the EOC complaint provides dates of discrimination, and the last date that she claims any discrimination occurred was in June of 2017, which was a year before she suffered the reduction in her salary. Her per diem rate remained the same for the duration of her employment until she resigned, which again is not part of the case before this court. But we believe that the reduction in her pay in 2018-19 is not properly before this court because it was not alleged in the EOC complaint, and it was not like or reasonably related to that claim. I guess as a final point, counsel brought up the issue with Don Smith. One, I don't believe his age is part of the record. He certainly was a male, but the fact was that Dr. Siebert addressed the issue of him having a relationship with a teacher as a performance matter or as a personnel matter. He was talked to. He was, and information or documentation regarding that communication or that conversation was included in her personnel file. So it was dealt with as a personnel matter. It didn't affect, it didn't impact or reflect on his performance. And clearly, the decision to transfer here was performance-based, and that was communicated to her at the time she was transferred, and her perception herself that she was meeting district's expectations is simply not accurate. Okay. Thank you, Mr. Westrom.  Mr. Retko, I'll give you two minutes to rebuttal. Thank you. I appreciate it. To begin with, counsel brought up the fact that there was a, when Ms. Hagen was made assistant principal at Fond du Lac High School, she had no prior high school experience, and that is true. But she had multiple years of being a principal at Milwaukee Public Schools in the K through eight grades. And moreover, she had to go through a posting process, and this posting process was something that required a group of people to sit down and determine who was eligible for the position. And in that time, there were approximately 40-some people involved in that posting process, and she was selected. Then, when she became principal, there was a second posting process she went through, and during that posting process, there were 21 people involved in that process, and again, she was selected by the committee and approved by the superintendent. Now, in Mr. Steinbar's situation, there was no posting process. The superintendent just selected him to replace Ms. Hagen without even telling Ms. Hagen he was replacing her. This occurred in April, and Ms. Hagen was not replaced and told she was being replaced until the end of May, even though Mr. Steinbar's had been offered the position in April at the same time he was offered the position to join the lunch group. Now, in regard to the lunch group, Ms. Lewis, the defense counsel raises the fact that Ms. Lewis was a female and attended maybe one or two lunches with this group. The fact of the matter is Mr. Siebert, who is the superintendent, said there were never any females part of the lunch group. So if she attended a lunch with them, she was not part of the group, and she was not even aware of how often this group met or that they bet on sporting events and that the loser paid for lunch. She didn't even know that. So the fact that that is a position that they're taking is incorrect. The other thing I want to argue is that Ms. Hagen was meeting her standards. She was effective all three years as principal. She was getting salary increases and that there was never any performance plan that she was put on and never noted that she was failing in any way. Okay. Thank you, Mr. Ratko. Thank you, Judge. We'll take the case under advisement and the court will be in recess until tomorrow.